**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAREN DUELL,<br><br>　　　　　　　　Plaintiff,<br>　v.<br>FIRST NATIONAL BANK OF OMAHA; THE DUNNING LAW FIRM,<br><br>　　　　　　　　Defendants. | CASE NO. 14-cv-2774 - WQH-JLB<br><br>ORDER |

HAYES, Judge:

The matters before the Court are the Motion for Summary Judgment filed by Defendant First National Bank of Omaha ("FNBO") (ECF No. 58); and the Motion for Summary Judgment, or alternatively Summary Adjudication, filed by Plaintiff Karen Duell. (ECF No. 60).

**I. Procedural Background**

On November 20, 2015, Duell initiated this action by filing a Complaint against Defendants FNBO and the Dunning Law Firm ("Dunning"). (ECF No. 1).

On May 27, 2016, Duell filed a Second Amended Complaint ("SAC") asserting the following four claims: (1) violations of the Fair Debt Collection Practice Act, 15 U.S.C. § 1692, *et seq*. against Dunning; (2) violations of the Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788, *et seq*. against FNBO and Dunning (3) violations of the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785.1, *et seq*. against FNBO, and; (4) violations of the

Fair Credit Reporting Act, 15 U.S.C. section 1681, *et seq.* against FNBO. (ECF No. 54). On June 10, 2016, Dunning filed an answer to the SAC. (ECF No. 55). On June 13, 2016, Defendant FNBO filed an answer to the SAC. (ECF No. 56).

On July 5, 2016, FNBO filed a Motion for Summary Judgment. (ECF No. 58). On July 25, 2016, Duell filed a response in opposition. (ECF No. 63). On August 2, 2016, FNBO filed a reply. (ECF No. 66).

On July 15, 2016, Duell filed a Motion for Summary Judgment, or Alternatively, Summary Adjudication against FNBO.[1] (ECF No. 60). On August 8, 2016, FNBO filed a response in opposition. (ECF No. 69). On August 15, 2016, Duell filed a reply. (ECF No. 72). On August 11, 2016, Duell filed a Notice of Settlement between Dunning and Duell. (ECF No. 71).

**II. Statement of Fact**

Duell and FNBO entered into a binding credit card agreement. (Duell Response, Statement of Undisputed Material Fact ("SUMF"), ECF No. 63-14 at 3). Duell "incurred financial obligations" to FNBO on this card and the "alleged debt" became delinquent. (FNBO SUMF, ECF No. 69-1 at 1). "In late 2011, [Duell] and FNBO agreed to modify certain provisions of the credit card agreement, which is known as a 'work-out' agreement and internally at FNBO as a 'hardship' program." (Duell SUMF, ECF No. 63-14 at 3). As part of this work-out program, Duell agreed to pay FNBO $255.00 per month. (Duell SUMF, ECF No. 63-14).

In a declaration filed by FNBO, Paul Osborne, the Managing Director of Collections and Recovery at FNBO, stated

> The "work-out" program is based on bank regulations imposed on FNBO by several regulatory bodies. In order for FNBO to re-age an account and cure contractually due past due balances, several criteria need to be met . . . . Also pursuant to these regulations, FNBO is only allowed to re-age the account one time for a "hardship program" and the account no longer

---

[1] Duell included a request for judicial notice in her motion for summary judgment. (ECF No. 60-16). The Court declines to take judicial notice because the document does not impact the Court's ruling on the cross-motions for summary judgment. *See, e.g.*, *Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

> qualifies for any future re-age action . . . . As part of the work-out program in this case, FNBO specifically discussed and agreed to the re-aging criteria before agreeing to re-age Plaintiff's account.

(Osborne Decl., ECF No. 58-4 at 2). Osborne stated that after implementing the work-out agreement with Duell, "FNBO was not allowed to re-age this account again in the future." *Id.* at 3. Osborne stated that,

> Pursuant to the work-out program and agreement, the account would convert from an open-end account to a closed-end account, the account would not bear interest, and the remaining balance would be paid off over a term of less than 60 months as required by regulator guidelines, which equaled a monthly payment in the amount of $255.00 in this case. The outstanding balance at the time the parties entered into the work-out agreement was $12,711.63.

*Id.* at 3. Osborne stated that FNBO sent a "confirmatory letter" to Duell describing how the work-out agreement modified certain terms and conditions of the initial Cardmember Agreement. *Id.* at 3. Osborne stated,

> Prior to entering into this work-out agreement, [Duell's] account was 90 days past due and being reported as such to the credit bureaus. . . . Plaintiff made the first three payments pursuant to the work-out program and as agreed to, at this point FNBO cured the delinquent balance and reported the debt as "current" to credit reporting bureaus. . . . On or around February of 2012, Plaintiff began missing her required monthly payment again and the Account was again being reported as "delinquent." . . . . Throughout most of 2012 and 2013 this Account was in "delinquent" status. . . . On or around August 15, 2013 . . . [Duell] requested that FNBO cease communicating with her. . . . On or around January of 2014, the account went 60 days past due and the account was sent to the Dunning Law Firm for legal remedies.

*Id.* at 3-4.

A letter dated November 8, 2011 from FNBO to Duell regarding the work-out agreement described the terms of the agreement and stated in part,

> At your request, your account will be placed in the First Bankcard Hardship program. . . . If you fail to make a payment when due, we may provide additional negative reporting regarding your account to consumer reporting agencies and place the account in charged off status. All other provisions of your Cardmember Agreement remain in full force and effect.

(ECF No. 58-6).

A letter dated February 14, 2014 from Dunning informed Duell that Dunning had been assigned to the account. (ECF No. 60-11). The letter stated,

> Please be advised that the above-referenced debt has been assigned to this firm to initiate collection efforts regarding your delinquent outstanding balance to our client. In the event that legal action is pursued and

> judgment is ultimately obtained against you, the judgment may include all court costs, prejudgment interest and attorney's fees in addition to the principal amount owed. If you wish to eliminate further legal action, please contact us[.]

*Id.*

"Dunning Law Firm had very limited authority regarding the account, as attorneys typically do. The Dunning Law firm could: (a) Enter into a payment plan; (b) Enter into a settlement agreement; or (c) Initiate a lawsuit." (Duell SUMF, ECF 63-14 at 5). "The Dunning Law Firm had the authority to settle the account on behalf of FNBO." (FNBO SUMF, ECF No. 69-1 at 2).

Following the February 14, 2011 letter, Duell and the Dunning Law Firm reached a payment arrangement. In a subsequent letter dated February 24, 2014 from Dunning to Duell, Dunning confirmed the terms of a "payment plan" and stated in part,

> The Bank is willing to accept the sum of $6106.63 in monthly payments of $170.00 . . . As long as you are current on your payments the Bank will refrain from further collection activities. However, in the event that you fail to timely make any payment, the Bank will swiftly move to collect the debt.

(ECF No. 60-12 at 2).

After February of 2014, Duell consistently made monthly payments of $170. (FNBO SUMF, ECF No. 69-1 at 3). "FNBO continued to report the account to credit reporting agencies pursuant to the contractual terms in place and mandated by the banking regulations." (Duell SUMF, ECF No. 63-14 at 5). FNBO reported the debt as delinquent to the credit bureaus from February 2014 through April 2015. (Duell SUMF, ECF No. 60-15 at 4-6; ECF No. 69-1 at 3).

Duell disputed the allegedly inaccurate information on her credit report with Experian, a credit bureau, in a letter dated July 28, 2014. (ECF No. 60-13 at 2). In the letter to Experian, Duell states that negative marks on her credit report that she was late with payment for multiple months in 2014 are inaccurate. *Id.* The letter stated,

> On February 24, 2014, I entered into a payment plan with attorney James MacLeod of the Dunning Law Firm who represents First National Bank of Omaha. The enclosed letter from Mr. MacLeod confirms the agreement made between myself and First National Bank of Omaha whereby, I would remit payments in the amount of $170.00 . . . . Additionally, Mr. MacLeod

>confirms that as long as I am current on my payments, First National Bank will "refrain from further collection activities" and this would include the marking of my credit report.

*Id.*

In a declaration by Susan Edwards, the Director of Risk Administration at FNBO, Edwards stated that FNBO received the dispute from Experian on or around August 15, 2014. (Edwards Decl., ECF No. 58-10 at 2). Edwards stated that FNBO received the dispute in the form of an Automated Credit Dispute Verifications ("ACDV"). (Edwards Decl., ECF No. 58-10 at 2). "The dispute language in the ACDV stated the following: 'Disputes present/previous Account Status/Payment History Profile/Payment Rating. Verify Payment History Profile.'" *Id.* Edwards stated, "After FNBO received the ACDV from Experian, and did an investigation of the card's overall history and payment history, it was determined that based on the delinquency state and the terms and conditions in place, the account was being reported accurately, including the outstanding balance and payment history." (Edwards Decl., ECF No. 58-10 at 2).

In a portion of a deposition of Paul Osborne, Osborne stated that the ACDV "came in [to FNBO] with two supporting documents" which were "scanned and were in our system." (Osborne Depo., ECF 60-3 at 12). Osborne stated that the FNBO account notes would not necessarily include a record of a payment arrangement negotiated by Dunning. *Id.* at 8. Osborne stated that the letter from Dunning to Duell might not be on the account notes because, "[FNBO] do[es] not necessarily get information from our law firms if they negotiate a payment arrangement, only if they come back to us to get approval for a settlement that's below the threshold." *Id.*

### III. Legal Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus.*

1  *Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The materiality of a fact
2  is determined by the substantive law governing the claim or defense.  *See Anderson v.*
3  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317,
4  322-24 (1986).

5        The moving party has the initial burden of demonstrating that summary judgment
6  is proper.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970).  The burden then
7  shifts to the opposing party to provide admissible evidence beyond the pleadings to
8  show that summary judgment is not appropriate.  *See Anderson*, 477 U.S. at 256;
9  *Celotex*, 477 U.S. at 322, 324.  The opposing party's evidence is to be believed, and all
10  justifiable inferences are to be drawn in her favor.  *See Anderson*, 477 U.S. at 255.  To
11  avoid summary judgment, the opposing party cannot rest solely on conclusory
12  allegations of fact or law.  *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).
13  Instead, the nonmovant must designate which specific facts show that there is a genuine
14  issue for trial.  *See Anderson*, 477 U.S. at 256.

15  **IV. Discussion**
16        **A. Rosenthal Fair Debt Collection Practices Act**

17        FNBO contends that it is entitled to judgment because it was reporting the debt
18  accurately as a matter of law. (ECF No. 69 at 2-3).  FNBO contends it could not re-age
19  the account because the account had been previously re-aged within the last five years
20  and to do so would violate "controlling banking regulations". (ECF No. 58-1 at 7, 9,
21  11-12; ECF No. 66 at 1-3).  FNBO contends the "Dunning firm agreed to accept
22  $170.00 a month on behalf of FNBO in lieu of commencing legal proceedings" but did
23  not agree to modify the original binding credit card agreement or report to credit
24  bureaus that the account was current. (ECF No. 66 at 2).  FNBO contends that it "has
25  a duty to accurately report the status of an account, whether it be current or in default"
26  and that "FNBO's actions in reporting the accurate status of the account to credit
27
28

bureaus were not attempts to collect a debt."[2]  *Id.*

Duell contends that she is entitled to judgment because FNBO was reporting the debt inaccurately as a matter of law. (ECF No. 60-1 at 16-27). Duell contends that the payment agreement negotiated by Dunning was binding on FNBO, superseded all earlier agreements, and reduced Duell's "minimum monthly payment for [Duell's] FNBO debt" to $170 per month. (ECF No. 63 at 11). Duell contends FNBO violated the Rosenthal Act by "falsely reporting that [Duell] was delinquent on [Duell's] monthly obligation despite receipt of at least $170 per month." (ECF No. 60-1 at 21).

The Rosenthal Act requires compliance with the federal Fair Debt Collection Practices Act ("FDCPA") and a debt collector that violates the FDCPA also violates the Rosenthal Act. *See* Cal. Civ Code § 1788.17; *Gates v. MCT Grp., Inc.*, 93 F. Supp. 3d 1182, 1192 (S.D. Cal. 2015); *Hosseinzadeh v. M.R.S. Assocs.*, 387 F. Supp. 2d 1104, 1118 (C.D. Cal. 2005). Duell alleges a number of violations of the Rosenthal Act through violations of the FDCPA. The two sections at issue are sections 1692e and 1692f. (ECF No. 60-1 at 16-26).

Section 1692e prohibits the use by a debt collector of "any false, deceptive or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e includes a non-exhaustive list of examples of proscribed conduct:

> (2) The false representation of
>     (A) the character, amount, or legal status of any debt; or
> ...
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
> ...
> (10) The use of any false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning a customer.

---

[2] In its Motion for Summary Judgment, FNBO also contends that a series of email alerts requested by Duell were not an attempt to collect a debt and did not violate the RFDCPA. (ECF No. 58-1 at 13-14). In her response, Duell states that these "e-mail alerts are not at issue in [Duell's] Second Amended Complaint." (ECF No. 63 at 13). The Court does not address this argument by FNBO because Duell states that she has not alleged a violation of the Rosenthal Act based on the email alerts.

15 U.S.C. § 1692e.

Section 1692f states that a "debt collector may not use unfair or unsconscionable means to attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692f includes a non-exhaustive list of examples of proscribed conduct. Section 1692f(1) prohibits "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

"Whether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether the least sophisticated debtor would likely be misled by a communication." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Guerrero v. RJM Acquisitions LLC*, 449 F.3d 926, 934 (9th Cir. 2007)). "The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061-62 (9th Cir. 2011) (quoting *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997)). "The standard is 'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naive,' particularly when those individuals are targeted by debt collectors." *Id.* at 1062 (quoting *Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir.2000)). "At the same time, the standard 'preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care.'" *Id.* (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).

The Court concludes that FNBO has failed to carry its burden to show that it reported Duell's debt accurately pursuant to binding banking regulations and contractual obligations. FNBO has not demonstrated that banking regulations required FNBO to report the debt as delinquent. *See* 65 Fed. Reg. 36,903 (describing the Uniform Retail Credit Classification and Account Management Policy noticed in the Federal Register as a "supervisory policy used by the Agencies for uniform classification and treatment of retail credit loans in financial institutions"). Duell has

1  not carried her burden to establish that FNBO falsely reported her debt as a matter of
2  law.  The Court concludes that a trier of fact could find that FNBO was reporting the
3  debt accurately pursuant to underlying regulatory and contractual obligations.
4     FNBO's Motion for Summary Judgment with respect to the Rosenthal Act is
5  denied and Duell's Motion for Summary Judgment with respect to the Rosenthal Act
6  is denied.

### B. Fair Credit Reporting Act

FNBO contends that it conducted a reasonable investigation in light of the limited dispute information received from Experian. (ECF No. 69 at 10).  FNBO contends that the investigation is not made unreasonable by the fact that "FNBO does not require its attorneys to report 'payment plans' negotiated within a pre-established authorization range." *Id.*  FNBO contends, "FNBO fully realized that the payment arrangement did not modify the terms and conditions of the contract and its investigation revealed such result." *Id.*

Duell contends that FNBO violated section 1681s-2(b) by "failing to reasonably investigate [Duell's] dispute." (ECF No. 60-1 at 28).  Duell contends that FNBO's "cursory investigation" was unreasonable because "FNBO does not notate a consumer's account following settlement and/or payment arrangements with an outside vendor." *Id.* at 30.  Duell contends that FNBO's investigation was unreasonable because any payment terms in FNBO's account notes are superseded by Duell's February 24, 2014 agreement with Dunning. *Id.*

Congress enacted the [FCRA] . . . to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy. *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1153 (9th Cir. 2009) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). "[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to

[consumer reporting agencies], called 'furnishers' in the statute."[3]  *Id.*  15 U.S.C. § 1681s-2(b) states that upon "receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency" furnishers are required to

> (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; [and] (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis[.]

15 U.S.C. § 1681s-2(b)(1); *see also Gorman*, 584 F.3d at 1154. A furnisher's investigation of disputed information must be reasonable to satisfy the FCRA. *See Gorman*, 584 F.3d at 1157 ("Requiring furnishers, on inquiry by a [consumer reporting agency], to conduct at least a reasonable, non-cursory investigation comports with the aim of the statute to 'protect consumers from the transmission of inaccurate information about them.'"). In determining reasonableness, "[t]he pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the [consumer reporting agency's] notice of dispute." *Id.* "Summary judgment is generally an inappropriate way to decide questions of reasonableness . . . . [but] is appropriate 'when only one conclusion about the conduct's reasonableness is possible.'" *Id.* at 1157.

In this case, the reasonableness of FNBO's investigation depends on the information included in the notice of dispute FNBO received from Experian. *See Gorman*, 584 F. 3d at 1157. The Court concludes that material issues of fact remain as to the information FNBO received in the notice of dispute alongside the statement in the Automated Credit Dispute Verifications ("ACDV") and the accuracy of FNBO's

---

[3] The parties agree that FNBO is a furnisher of information within the meaning of the statute. *See* ECF No. 69 at 8 ("A furnisher of information, such as FNBO is required to conduct an investigation of a dispute received from a credit reporting agency.").

1 credit reporting in light of its contractual obligations to Duell.[4] The Court concludes that summary judgment is inappropriate as to the FCRA claim because a finder of fact could come to more than one conclusion about the requirements of a reasonable investigation under the circumstances. *Id.* at 1157. FNBO's Motion for Summary Judgment with respect to the FCRA claim is denied and Duell's Motion for Summary Judgment with respect to the FCRA claim is denied.

### C. California Consumer Credit Reporting Agencies Act

FNBO contends that FNBO did not agree to cure the past due balance on the account or report the account as current. (ECF No. 69 at 12). FNBO contends that FNBO could not legally agree to cure the past due balance on the account. *Id.* FNBO contends that FNBO did not agree to "modify all of the essential terms of the credit card agreement based on the Dunning payment arrangement" and could not do so according to banking regulations. (ECF No. 66 at 6-7). FNBO contends that it reported the debt accurately "pursuant to the binding terms and conditions of the credit card account." (ECF No. 69 at 12).

Duell contends that FNBO is liable under California Civil Code section 1758.25(a) of the California Consumer Credit Reporting Agencies Act ("CCCRAA") "for FNBO's failure to report [Duell's] alleged debt accurately to the Credit Bureaus." (ECF No. 60-1 at 33). Duell contends that FNBO "should have known that FNBO was reporting [Duell's] account inaccurately" because FNBO was notified of the Dunning payment arrangement and Duell's dispute about FNBO's credit reporting. *Id.*

Pursuant to the CCCRAA, "a person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1728.25(a). The Court of Appeals for the Ninth Circuit has recognized that a private

---

[4] In briefing, the FNBO and Duell appear to dispute the the contents of notice of dispute received by FNBO. (Duell SUMF, ECF No. 63-14 at 6). During oral argument, FNBO stated that the notice of dispute contained the ACDV as well as the letter from the Dunning firm confirming the $170 payment arrangement.

1  right of action exists to enforce Section 178.25(a) against furnishers of information. *See Gorman,* 584 F.3d 1147, 1171-73 (9th Cir. 2009). The phrase "incomplete or inaccurate" within the CCCRAA has been interpreted in a matter consistent with the FCRA to mean "patently incorrect or materially misleading." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010); *see also Kuns v. Ocwen Loan Servicing, LLC*, 611 F. App'x 398, 400 (9th Cir. 2015) (interpreting "incomplete and inaccurate . . . as requiring that furnishers of credit information . . . not only refrain from making any reports that are obviously wrong or missing crucial data, but also that the reports not contain information that is materially misleading.").

FNBO failed to carry its burden to establish that FNBO was reporting accurately pursuant to binding banking regulations and contractual obligations. Duell has failed to carry her burden to show that no material issue of fact exists as to whether FNBO knew or should have known that it was furnishing "incomplete or inaccurate" information to a consumer credit reporting agency. *See* Cal. Civ. Code § 1728.25(a). The Court concludes that a trier of fact could determine that FNBO was reporting the Duell account accurately in light of its contractual obligations and existing regulations. FNBO's Motion for Summary Judgment with respect to the CCCRAA claim is denied and Duell's Motion for Summary Judgment with respect to the CCCRAA claim is denied.

**V. Conclusion**

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by FNBO (ECF No. 58) is DENIED and the Motion for Summary Judgment, or Alternatively Summary Adjudication filed by Duell (ECF No. 60) is DENIED.

DATED: November 29, 2016

**WILLIAM Q. HAYES**
United States District Judge